**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **ROBERT MATTHEWS,** ) | |
| ) | |
| Plaintiff, ) | **Civil Action No.** |
| ) | |
| v. ) | **303CV01812** |
| ) | |
| **UNITED STATES OF AMERICA, UNITED** ) | **MRK** |
| **STATES ATTORNEY GENERAL'S OFFICE,** ) | |
| **FRANK WHITNEY, PAUL NEWBY,** ) | |
| **ROBERT HIGDON, PATRICK MEEHAN,** ) | |
| **FEDERAL BUREAU OF INVESTIGATION,** ) | |
| **SPECIAL AGENT IN CHARGE OF** ) | |
| **PHILADELPHIA OFFICE JEFFREY** ) | |
| **LAMPINSKI, AGENT ROBERT WITTMAN,** ) | **October 21, 2003** |
| **U.S.MARSHAL CHARLES REAVIS** | |
| Defendants. | |

**COMPLAINT**

1.      Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 since a federal question is

presented and pursuant to 5 U.S.C. § 702 based on the legal wrong suffered by the plaintiff as a

result of the defendant agencies' actions.  Venue in this district is proper pursuant to 28 U.S.C.

§ 1391 and 5 U.S.C. § 703.

2.      Robert Matthews is a Connecticut resident with his principal residence in

Washington Depot.

3.      In 2000, the plaintiff Robert Matthews purchased a 50% interest in certain

**ORIGINAL**

historical documents.

4.      After purchase of these documents, experts authenticated one of the documents as an original copy of the United States Bill of Rights ("the document").

5.      This copy of the Bill of Rights was and is estimated to be worth far in excess of $30,000,000.00 on the private market.

6.      In March 2003, the plaintiff and his partner Wayne Pratt agreed to sell their copy of the Bill of Rights to the National Constitution Center (the "NCC") in Philadelphia, Pennsylvania.

7.      Unbeknownst to the plaintiff, the transaction to purchase and sell the document to the NCC was an illegal "sting" operation concocted by the defendant United States of America through its agents, servants, appointees and employees in order for the defendants to illegally gain possession of the document.

8.      In order to set up this illegal sting, the defendant U.S. Attorney General's Office through the defendants U.S. Attorney Frank Whitney, Assistant U.S. Attorney Paul Newby and U.S. Marshall Charles Reavis (the "North Carolina defendants") prepared and submitted a false application for seizure warrant under seal in North Carolina.

9.      The seizure warrant indicated that the document was in North Carolina, and was subject to seizure because of various unspecified criminal acts.

10.     The North Carolina federal judicial officer signed the warrant application without

-2-

being told by these defendants that in fact the document was in Connecticut, had been removed from the State of Connecticut by virtue of the illegal actions of the defendants, and no illegal acts had occurred justifying a seizure.

11.     The North Carolina defendants then conspired with several individuals including U.S. Attorney Patrick Meehan, FBI agent Lampinski, and FBI agent Robert Whittman ("the Pennsylvania defendants") to construct the illegal sting operation to be conducted in Philadelphia.

12.     Utilizing private persons representing the interests of the NCC, the defendants made it appear as though the NCC was willing to pay $5,000,000 for the document at a sale in Philadelphia.  By virtue of this representation, orchestrated by the North Carolina defendants with the assistance of the Pennsylvania defendants, the document was removed from Connecticut, its rightful home, and taken to Philadelphia.

13.     On or about March 18, 2003, the document was delivered to Philadelphia for the sale, but before the sale could be consummated the Pennsylvania defendants, and five other unidentified FBI agents under the direction of Mr. Meehan, showed the courier carrying the document for the plaintiff and Pratt the illegally procured warrant, seized the document and took the document into the possession of the defendants.

14.     On March 20, 2003, the North Carolina defendants, under seal, notified the federal judicial officer that the document was in North Carolina, and requested another seizure warrant to institute civil forfeiture proceedings.

15.     In reality, the second application was also false in that the document was in the custody of the Pennsylvania defendants until April 1, 2003, and was again not within the civil forfeiture jurisdiction of the North Carolina count when presented to that court.

16.     The North Carolina defendants, subsequent to the second seizure application communicated with the Pennsylvania defendants and asked that the document be brought to North Carolina so that Reavis could serve the second warrant in North Carolina. Without any legal basis and contrary to law, the Pennsylvania defendants complied on April 1, 2003.

17.     The document was then again illegally seized by the North Carolina defendants and placed in a U.S. Federal building in Raleigh, North Carolina. A complaint for civil forfeiture was filed by the defendants Newby and Whitney.

18.     The plaintiff filed a timely verified statement of interest indicating his 50% ownership interest in the document. Wayne Pratt, the plaintiff's partner and a 50% owner of the document, also filed a timely claim.

19.     The U.S. Attorney General, through the North Carolina defendants, then began a campaign of threats of potential criminal actions against Pratt for unspecified crimes related to his possession of the document in order to gain an advantage in the civil forfeiture proceeding

-4-

and to intimidate Pratt and the plaintiff.

20.    While Matthews was never made the target of any criminal investigation, the North Carolina defendants offered to refrain from calling Matthews in front of a grand jury in the Pratt case if he gave up his interest in the document in the civil action for no legal consideration.

21.    The North Carolina defendants made an offer to Pratt to end any further criminal investigation, and announce Pratt's innocence, if he would give up all his ownership in the document and also indicate that he had authority to also convey the plaintiff's interest in the document.   The plaintiff never gave Pratt any such authority and in fact, Pratt conveyed an additional ownership interest to the plaintiff who now owns a majority of the document.

22.    During the pendency of the civil forfeiture action, the plaintiff filed dispositive motions relating to the defendants' lack of jurisdiction, and raising issues related to the impropriety of the Government's actions.   The North Carolina court scheduled argument on these issues for September 11, 2003.

23.    On September 10, 2003, one day prior to these important rulings, the North Carolina defendants "voluntarily" dismissed, purportedly pursuant to Fed. R. Civ. P. 41, their civil forfeiture action and announced that the action was no longer necessary because Pratt had agreed to give the entire document, including Matthews' ownership interest, to North Carolina.

-5-

24.    The North Carolina defendants continue to illegally possess the document and refuse to return it to Matthews even though they have abandoned their civil forfeiture claims.

**COUNT I – ACTION UNDER THE ADMINISTRATIVE PROCEDURES ACT**

25.    The continued illegal possession of the document by the defendants represents an illegal taking of the document without just compensation, a complete denial of Matthew's constitutional rights to procedural and substantive due process under the Fourth, Fifth and Seventh Amendments to the Constitution, the very document that is the subject of the underlying illegal seizure action.

26.    The defendants' actions were and continue to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority or limitation, or short of statutory right; and/or without observance of procedure required by law, all in violation of 5 U.S.C. § 706 and the Amendments to the United States Constitution set forth above.

**COUNT II – *BIVINS* ACTION AGAINST THE INDIVIDUAL DEFENDANTS**

27.    The individual defendants' actions set forth above, acting individually and in concert with each other as partners, joint venturers, co-conspirators and/or agents of each other violated the plaintiff's rights under the Fourth, Fifth and Seventh Amendments to the United States Constitution.

**WHEREFORE**, the plaintiff demands:

1.      A writ of mandamus issue compelling the defendants to return the document to Matthews, and/or ordering the sale of the document for Matthews' and any other owner's benefit;

2.      A decision by this Court, and/or a jury, if appropriate, on the questions of law and fact set forth above pursuant to 5 U.S.C. § 706, whereby the reviewing Court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and/or without observance of procedure required by law; and thereby compel agency action unlawfully withheld or unreasonably delayed;

3.      Compensatory and punitive damages;

4.      Attorneys fees and costs for this action and for prevailing in the civil forfeiture action;

5.      A declaratory judgment determining the actions of all defendants to be illegal and outside their powers;

6.      Whatever other relief at law or equity pertains.

-7-

## JURY TRIAL DEMAND

The plaintiff demands a trial by jury on all appropriate claims.

THE PLAINTIFF,

By:

MICHAEL STRATTON
STRATTON FAXON
59 ELM STREET
NEW HAVEN, CT 06510
(203) 624-9500
(203) 624-9100 Fax
mstratton@strattonfaxon.com
Fed. Bar No. CT 08166

-8-